UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RUBEN SANCHEZ, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil No. 17-11811-LTS |
| STEVEN SILVA et al., | ) ) ) | |
| Respondents. | ) ) | |

MEMORANDUM AND ORDER ON PETITION FOR HABEAS CORPUS (DOC. NO. 1)

November 15, 2018

SOROKIN, J.

Ruben Sanchez, a prisoner at the Souza-Baranowski Correctional Center in Shirley, Massachusetts, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he alleges a violation of Batson v. Kentucky, 476 U.S. 79 (1986). The respondents have opposed the petition. Because his claim is meritless, Sanchez's petition is DENIED.

I.   BACKGROUND

In July 2011, following a jury trial in Suffolk County Superior Court, Sanchez was convicted of second-degree murder, unlawful possession of a firearm, and carrying a loaded firearm, all in violation of Massachusetts law. Doc. No. 1 at 2-3;[1] S.A. at 1-2, 8-9.[2] He was charged and tried along with two co-defendants, both of whom also were convicted of gun-related offenses. Commonwealth v. Brea, 32 N.E.3d 369 (table), 2015 WL 3755894, at *1 & n.2

---

[1] Citations to items on the Court's electronic docket reference the assigned document number and the page number from the ECF header.
[2] The respondent has filed a Supplemental Answer ("S.A.") attaching the state-court record in one bound volume, with transcripts contained on an attached CD. Doc. No. 13.

(Mass. App. Ct. June 17, 2015); Doc. No. 17 at 1-2; Doc. No. 20 at 3. Sanchez received a life sentence. Doc. No. 1 at 1; S.A. at 9.

The charges against Sanchez arose from a shooting in Boston's Hyde Park neighborhood. See Doc. No. 20 at 4-5 (summarizing the trial evidence). Because Sanchez's sole claim relates to the selection of his jury, the Court need not detail the evidence offered to prove Sanchez's guilt at trial. Instead, the focus here is on the two-day jury empanelment process in this case.

Sanchez and both of his co-defendants are Hispanic. Doc. No. 17 at 4; Jury Trial Tr. Vol. I at 10, Commonwealth v. Brea, Nos. 2009-11130, -11131, -11132 (Mass. Super. Ct. Suffolk Cty. June 9, 2011) (CD on file with the Court) [hereinafter "Trial Tr. I"].

The jury selection process used by the trial court was not unusual. The trial judge first spoke to the entire venire and asked general questions aimed at revealing certain obvious biases. Individual jurors then came to sidebar for further questioning, including follow-up on their responses to the group questioning and additional inquiries proposed by the parties. After each individual voir dire, the prospective juror was either excused for cause, subject to a peremptory strike by one of the parties (such strikes were exercised on a rolling basis), or seated on the jury. See Doc. No. 20 at 6 (outlining the process and citing relevant portions of the transcript); see generally Trial Tr. I; Jury Trial Tr. Vol. II, Commonwealth v. Brea, Nos. 2009-11130, -11131, -11132 (Mass. Super. Ct. Suffolk Cty. June 10, 2011) (CD on file with the Court) [hereinafter "Trial Tr. II"].

The process began on June 9, 2011. The first juror to be seated was a 25-year-old black male with a college degree and a temporary job in accounting. Trial Tr. I at 68-72, 76. The prosecutor exercised her first peremptory strike against a 19-year-old black male who had completed one year of community college. Id. at 87-92. The second juror to be seated was a 35-

year-old white male who worked as a valet service supervisor. Id. at 109-16. The prosecutor exercised her second peremptory strike against a white male who was about to begin medical school. Id. at 132-36.

When the prosecutor exercised her third peremptory strike against a 19-year-old Hispanic male who had completed one year at Brandeis University, defense counsel raised an objection pursuant to Commonwealth v. Soares, 387 N.E.2d 499 (Mass. 1979),[3] citing the prosecutor's use of two peremptory strikes to remove young men "from the minority community." Trial Tr. I at 144-47. The trial judge noted that "two can certainly make a pattern," and required the prosecutor to state a neutral reason for her challenge. Id. at 147-48. The prosecutor cited the prospective juror's youth, explaining that the case would involve "extensive witnesses as well as scientific evidence." Id. at 148. After hearing further argument from the parties regarding the stated reason, the trial judge credited the prosecutor's explanation as "genuine," noted his own belief that exercising strikes based on age is "troublesome," but acknowledged that age is not an area subject to the protections of Soares, and therefore found the stated reason "adequate" and permitted the challenge. Id. at 148-51. This is one of two strikes that Sanchez cites as a basis for the Batson claim he presents to this Court; for purposes of this decision, the Court will refer to this as "the Salazar strike" (using the challenged juror's surname).

Thereafter, a 22-year-old Hispanic female with a ninth-grade education was seated, id. at 162-68, but was excused for cause the following day after notifying the court that she would be unable to arrange care for her two small children, Trial Tr. II at 3-4. A 48-year-old white male

---

[3] Soares prohibits the "exercise of peremptory challenges to exclude members of discrete groups, solely on the basis of bias presumed to derive from that individual's membership in the group." 387 N.E.2d at 516. Massachusetts courts apply the same analysis to objections raised under Soares and the state Declaration of Rights as they do to those raised under Batson and the United States Constitution. Commonwealth v. Prunty, 968 N.E.2d 361, 371 n.14 (Mass. 2012).

3

manager of a nonprofit was chosen for the jury next. Trial Tr. I at 172-80, 250. Then, a 19-year-old male who had completed one year at Northeastern University was initially seated, but was later excused based on difficulty arranging and paying for commutes into Boston for the duration of the trial.[4] Id. at 180-88, 218. A 23-year-old Hispanic male with a college degree who planned to attend law school was seated, id. at 205-10, and the prosecutor used a peremptory strike to remove a female security guard who had formerly worked as a legal assistant to a criminal defense attorney, id. at 212-18.

The prosecutor exercised another peremptory strike against an 18-year-old Hispanic female who had just completed high school and was headed to college that fall. Id. at 243-47. Correctly anticipating that defense counsel would object again under Soares, the prosecutor preemptively invoked the same neutral justification for this strike—the prospective juror's youth. Id. at 247. Argument by the parties ensued, and the trial judge observed an apparent "pattern grounded on age" that he found "troubling," but which was "not a forbidden zone, such as religion, gender, race and the like." Id. at 248-49. The trial judge again found the prosecutor's stated reason "genuine" and sustained the strike, after considering that three of the prosecutor's five peremptory strikes had been used against members of minority communities and also canvassing the races and genders of the jurors already seated. Id. at 249-51. This is the second strike that Sanchez cites as a basis for his Batson claim in this Court; for purposes of this decision, the Court will refer to it as "the Ortiz strike" (using the challenged juror's surname).

The first day of empanelment ended with the seating of a 19-year-old female high-school graduate who the Court surmises was of Egyptian descent. See id. at 252-59 (reflecting juror's last name was Abdelaal); Brea, 2015 WL 3755894, at *2 (describing "the final jury" at

---

[4] The record does not reflect certain characteristics, such as race and age, of every juror.

4

Sanchez's trial has including "one [person] who was Egyptian"). One defense counsel suggested the genuineness of the reason cited by the prosecutor to explain the Salazar and Ortiz strikes was undermined by her failure to strike this similarly youthful juror. Trial Tr. I at 257. The trial judge again lamented the arbitrariness that peremptory challenges inject into jury selection, but reiterated that "one [need not] behave . . . consistently in order to exercise peremptories lawfully." Id. at 257-58.

Empanelment continued the following day. A 37-year-old female from Cape Verde who ran a daycare and a 40-year-old female with a master's degree in Latin American studies were seated. Trial Tr. II at 4-10, 40-46. The prosecutor used a peremptory strike to remove a Russian-born female working toward a Ph.D. in biology at Harvard. Id. at 16-22, 46-48. A 45-year-old Salvadorian male who worked as a truck driver and a 59-year-old female nurse were seated. Id. at 49-53, 94-100. The prosecutor used a peremptory strike to remove a female who worked at State Street Bank and lived in the neighborhood where the crime happened, referenced a concern that "something like this can happen" there, and expressed some uncertainty about arranging care for her school-aged son. Id. at 102-10.

When the prosecutor used another peremptory strike to remove a black female teacher with brothers who had been convicted of crimes, defense counsel raised another Soares objection, citing a pattern of striking "minority females." Id. at 126-35. The trial judge found "a current pattern in terms of race or ethnicity" after confirming that the prosecutor had exercised five consecutive strikes against women, and had used five of its eight peremptory challenges against members of minority communities. Id. at 135-36. The prosecutor justified her challenge by pointing to the fact that one of the prospective juror's brothers had been convicted of murder in Suffolk County, an explanation the trial judge found was genuine and adequate. Id. at 136-37.

5

A 31-year-old male college graduate with a job at an investment firm was seated next. Id. at 138-42. After counsel for one of Sanchez's co-defendants used a peremptory strike against a white female, the trial judge sua sponte inquired about the characteristics of the prospective jurors he had challenged. Id. at 149-50. Upon learning he had removed one Hispanic male, two black females, and one white female, the trial judge said that defendant was "getting close on a gender thing" but found no "pattern at this time."[5] Id. at 150-51.

Selection proceeded with the seating of a 62-year-old female originally from St. Lucia. Id. at 153-64. She was followed by a 55-year-old female audiologist, a female student about to start her senior year in college,[6] and a 41-year-old female deaf interpreter, all of whom were seated. Id. at 173-82, 187-94, 200-06. Next, the prosecutor used peremptory strikes to remove an unemployed former medical assistant with a restraining order against her ex-boyfriend and a woman working in public relations while attending college. Id. at 206-09, 211-16. When the prosecutor challenged the latter of these women, defense counsel objected under Soares, citing a pattern of seven consecutive strikes used against women. Id. at 216-17. The trial judge found that such a pattern had been established and required the prosecutor to state a neutral reason for the relevant strike. Id. at 217-18. The prosecutor pointed to an out-of-state conviction for driving under the influence, and the fact that the juror's age at the time of the offense suggested

---

[5] On the first day of jury selection, counsel for Sanchez's co-defendants used peremptory strikes to remove a prospective juror from Cape Verde who had "turned and smiled at" the prosecutor during individual voir dire, Trial Tr. I at 193-94, and a prospective juror from Colombia whom one defendant believed had spoken with a friend or family member of the victim during a court recess, id. at 219-20, 226-29.

[6] The precise age of this juror is not clear, as the transcript appears to contain a typographical error. Her date of birth appears as "07/02/1998," Trial Tr. II at 194, which would mean she was twelve years old at the time of her selection. A typical rising senior in college would be twenty or twenty-one years old, so the "1998" likely should have been "1990." Resolution of this question is unnecessary for present purposes.

6

underage drinking. Id. at 218. Again, the trial judge found the prosecutor's stated reason was genuine and, though he viewed it as "leaning towards the margin," he concluded it was not "inadequate" and therefore permitted the challenge. Id.

The prosecutor used another peremptory strike to remove a male prospective juror who expressed strong support for gun rights. Id. at 247-54. After a 31-year-old female who worked at Panera, had attended college, and said her brother was awaiting trial on gun charges was seated, the prosecutor used a peremptory strike against a male prospective juror who was living with his parents in New Hampshire for the summer after having completed his first year at Boston University. Id. at 260-70.

When Sanchez's lawyer subsequently used his sixth peremptory strike to challenge a white male financial analyst, the prosecutor objected under Soares, noting that five of Sanchez's six strikes had been used against white prospective jurors. Id. at 278-83. The trial judge found a pattern of strikes based on race, and defense counsel explained that he "didn't like [the juror's] body language." Id. at 283. Although he initially found counsel's explanation "lacking," he ultimately permitted the strike after counsel for both of Sanchez's co-defendants expressed their intent to use peremptory challenges against the same juror for similar reasons. Id. at 283-87.

The last juror to be seated was a 64-year-old woman who was a retired teacher's aide. Id. at 288-93. According to the MAC, four members of the selected jury were black, three were Hispanic, seven were white, and one was Egyptian.[7] Brea, 2015 WL 3755894, at *2.

---

[7] This accounts for fifteen jurors. Sixteen individuals were cleared during the voir dire process. The Court assumes one cleared juror was excused during the trial. Neither party describes this fact in its briefing on Sanchez's federal claim, and the Court need not explore this detail further, as it has no bearing on its resolution of Sanchez's petition.

7

Following his conviction, Sanchez filed a timely direct appeal challenging, among other things, the Salazar and Ortiz strikes. S.A. at 9, 25; Doc. No. 1 at 3-4. The Massachusetts Appeals Court ("MAC") affirmed Sanchez's convictions and sentence in an unpublished June 17, 2015 decision. Brea, 2015 WL 3755894. The Supreme Judicial Court denied review, S.A. at 15, and the United States Supreme Court denied certiorari, Sanchez v. Massachusetts, 137 S. Ct. 1078 (2017).

In his timely federal habeas petition, Sanchez advances only one of the several challenges considered and rejected by the MAC. He claims his constitutional rights were violated when the trial court permitted the prosecutor to use peremptory challenges to remove "one or more qualified Hispanic prospective jurors based on their Hispanic ethnicity" and credited the prosecutor's "pretextual" explanations for the Salazar and Ortiz strikes. Doc. No. 1 at 9. Sanchez's petition is fully briefed and ripe for resolution.

II. LEGAL STANDARD

State court decisions merit substantial deference. Federal district courts may not grant a writ of habeas corpus unless they find that the state court's adjudication of the petitioner's claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As the Supreme Court repeatedly has emphasized, these standards are "difficult to meet," with the petitioner carrying a heavy burden of proof. Harrington v. Richter, 562 U.S. 86, 102 (2011); accord Cullen v. Pinholster, 563 U.S. 170, 181 (2011); see Burt v. Titlow, 571 U.S. 12, 19-20 (2013) (emphasizing "formidable barrier" faced by federal habeas petitioner where claims already were

adjudicated in state court, and limiting relief to cases of "extreme malfunctions" by state criminal justice systems).

A state court ruling is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000); see Glebe v. Frost, 135 S. Ct. 429, 431 (2014) (emphasizing that "circuit precedent does not constitute 'clearly established Federal law'" for these purposes); see also Bebo v. Medeiros, 906 F.3d 129 (1st Cir. 2018).  The state court is not required to cite, or even have an awareness of, governing Supreme Court precedents, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002).

A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule, but "unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-08.  When making the "unreasonable application" inquiry, federal habeas courts must determine "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. An unreasonable application of the correct rule can include the unreasonable extension of that rule to a new context where it should not apply, as well as an unreasonable failure to extend the rule to a new context where it should apply. Id. at 407.  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

A showing of clear error is not sufficient for a habeas petitioner to establish entitlement to relief. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); accord McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc). If a state court's decision "was reasonable, it cannot be disturbed" on habeas review. Hardy v. Cross, 565 U.S. 65, 72 (2011) (per curiam); see Renico v. Lett, 559 U.S. 766, 779 (2010) (admonishing federal habeas courts not to "second-guess the reasonable decisions of state courts"). Relief is available only where a state court's "determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); see Sanna v. Dipaolo, 265 F.3d 1, 13 (1st Cir. 2001) (explaining habeas relief is appropriate only if a state court ruling is "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible options" (quotation marks omitted)).

Federal courts ordinarily must presume that the state court's factual findings are correct, unless the petitioner has rebutted that presumption with clear and convincing evidence. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340-41 (2003); see Pike v. Guarino, 492 F.3d 61, 68 (1st Cir. 2007) (discussing the "separate and exacting standard applicable to review of a state court's factual findings").

III. DISCUSSION

Citing the Salazar and Ortiz strikes, Sanchez asserts that his constitutional rights, and the Supreme Court's clearly established directives in Batson, were violated by what he argues was the discriminatory exclusion of Hispanic members of the venire from his jury.[8] Doc. No. 17 at 3-4, 33-45. He characterizes the MAC as having improperly reasoned that his Batson claim

---

[8] Though neither party raises it and the MAC did not mention it, the Court notes that Sanchez's objections in the trial court accused the prosecutor of aiming her strikes at members of "the minority community" generally, and not at Hispanic individuals specifically.

10

could not succeed where the jury included some Hispanic members, despite clear Supreme Court precedent establishing that an equal protection violation occurs where even one juror is excluded for impermissible reasons. Id. at 38-39. According to Sanchez, the state courts applied "abjectly incorrect law," ignored inherent contradictions in the prosecutor's stated reasons for the relevant strikes, and as a result are entitled to no deference from this Court. Id. at 39-45.

The MAC observed that the trial court had "inquired into the prosecutor's rationale for challenging [Salazar], and the prosecutor [had] independently offered an explanation for" striking Ortiz, even though the trial court had not found "a pattern of discriminatory intent." Brea, 2015 WL 3755894, at *2. According to the MAC, the trial court's "colloquy with counsel was sufficient to evaluate meaningfully the prosecutor's proffered reasons," and its findings that the "race-neutral reasons—age and ability to digest information—were genuine and adequate" were "supported by the record." Id. In the MAC's view, the trial judge "applied the correct standard in conducting an independent evaluation of the adequacy and genuineness of the prosecutor's proffered reasons." Id. at *2 n.6. As further support, the MAC noted that two apparently Hispanic jurors had been seated as jurors when the prosecutor exercised the second peremptory strike at issue, and that the final jury featured jurors of various races and ethnicities, including "three who were Hispanic." Id. at 369.

The MAC's ruling was neither contrary to, nor an unreasonable application of, Batson or its progeny. Batson forbids the use of peremptory challenges to exclude citizens from juries "on the basis of race." Sanchez v. Roden,[9] 753 F.3d 279, 298 (1st Cir. 2014) (citing Batson, 476 U.S. at 99). Subsequent decisions of the Supreme Court have "only reinforced Batson's

---

[9] That the petitioner presently before this Court shares a surname with the petitioner in a case the First Circuit twice reviewed on a similar Batson claim is mere coincidence.

11

holding" by extending it to strikes based on gender and ethnicity, and by endorsing the view that the Fourteenth Amendment prohibits striking even one prospective juror for a discriminatory purpose. Snyder v. Louisiana, 552 U.S. 472, 478 (2008); see J.E.B. v. Alabama, 511 U.S. 127, 130 (1994) (concluding the Constitution "forbids peremptory challenges on the basis of gender as well as on the basis of race"); Hernandez v. New York, 500 U.S. 352, (1991) (applying Batson to claim that jurors were unconstitutionally removed by reason of their Latino ethnicity).

Courts use a "three-step framework" to assess whether a Batson violation occurred:

> When raising an objection to a prosecutor's use of a peremptory challenge, a criminal defendant must first make a prima facie case of racial discrimination. If such a showing is made, then the prosecution must offer a race-neutral basis for striking the juror in question. Finally, based on all of the circumstances, the court must determine whether the defendant has carried his ultimate burden of showing purposeful racial discrimination.

Sanchez v. Roden, 808 F.3d 85, 89 (1st Cir. 2015) (citations and quotation marks omitted). "At step two" of this inquiry, "the prosecution's reason does not have to be 'persuasive, or even plausible'"—it need only be "nondiscriminatory." Id. at 90 (quoting Purkett v. Elem, 514 U.S. 765, 768 (1995) (per curiam)). At step three, the "critical issue . . . 'is the persuasiveness of the prosecutor's justification for his peremptory strike.'" Id. (quoting Miller-El v. Cockrell, 537 U.S. 322, 338-39 (2003). This final step "turns on credibility determinations and a fact-driven evaluation of all the relevant circumstances." Id.

Sanchez faces a formidable task in his quest for habeas relief. Not only does he bear the burden of proving, at Batson's third step, that the prosecutor in his case "acted with discriminatory purpose," id., he must rebut the presumption of correctness that attaches to the state courts' contrary determination at that step with clear and convincing evidence. Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. §§ 2254(d)(2), (e)(1)). He has not done so.

12

Though the MAC cited only state law in rejecting Sanchez's appeal, it need not have invoked Batson by name where "neither the reasoning nor the result of [its] decision contradicts" the principles enunciated therein. Early, 537 U.S. at 8. Sanchez's view that the state courts applied an incorrect standard in assessing his objections to the Salazar and Ortiz challenges is wholly unsupported. The trial judge's acknowledgement of dissenting opinions raising concerns about the arbitrariness inherent in peremptory challenges—concerns which the trial judge admitted to sharing—does not negate the fact that the trial court resolved Sanchez's objections in a manner entirely consistent with the process required by Batson. Similarly, the MAC's observation that Sanchez's final jury included members from several racial and ethnic groups neither erases its preceding application of the appropriate legal framework nor amounts to a finding that any error was harmless because there were Hispanic members of the jury.

Not only did the state courts apply the appropriate legal standards, they applied the standards reasonably. The Court need not linger over Batson's first step, as the prosecutor cited youth and inexperience as her reasons for striking both Salazar and Ortiz, and the state courts credited and upheld those reasons in rejecting Sanchez's objections. See Hernandez, 500 U.S. at 359 ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."). Review of the second step of the Batson framework is likewise straightforward. Because "[a]ge is not a protected category under Batson," Sanchez, 808 F.3d at 90, there is no justification for second-guessing the MAC's reasonable determination that the prosecutor identified an ethnicity-neutral basis for both relevant strikes.

This Court owes deference to the state courts' findings at <u>Batson</u>'s third step that the reasons cited by the prosecutor to justify the relevant strikes genuinely reflected her true motives. Sanchez's attacks on those findings are fairly summarized as general complaints that the challenged jurors were smart and qualified despite their youth, and that the law requires absolute consistency from prosecutors exercising peremptory challenges (i.e., here, the prosecutor was required to strike all 18- and 19-year-old prospective jurors, or none of them). As to his first complaint, it matters little whether Salazar and Ortiz, in fact, were smart or would have made capable jurors despite their youth. Had they been intellectually incapable of serving as jurors, they would have been subject to removal for cause. "[W]hat matters is whether the explanation" offered by the prosecutor "genuinely reflected [her] true motive," regardless of its wisdom. <u>Id.</u> at 91. The state courts concluded that the reasons given were sincere. They did so only after considering relevant circumstances such as the races and ages of previously seated jurors, the characteristics of the prospective jurors previously challenged by the prosecutor, and the fact that the prosecutor had not objected to every "youthful" juror.[10]

As to Sanchez's second complaint, he has cited no clearly established Supreme Court precedent, and the Court is aware of none, categorically holding that "peremptory challenges [are not] a matter as to which the prosecution has a right to be arbitrary." Doc. No. 17 at 45. Indeed, <u>Batson</u> itself—in language quoted by Sanchez himself—recognizes that, so long as they do not endeavor to remove jurors on the basis of their race, prosecutors as a general matter are entitled

---

[10] Sanchez makes much of the fact that, at the end of the first day of empanelment and after the Salazar and Ortiz strikes, the prosecutor elected not to strike a 19-year-old woman with only a high school education. He ignores, however, the fact that, between the Salazar and Ortiz strikes, the prosecutor assented to seating a 22-year-old Hispanic woman with small children and a 23-year-old Hispanic male with a college degree. These decisions arguably undermine an allegation of discrimination against Hispanic individuals and suggest that the prosecutor genuinely was focused on youth and a lack of life experience.

14

to strike jurors for any reason they believe might impact the outcome of the trial. See id. (quoting Batson, 476 U.S. at 89). Besides reciting facts known to and considered by the state courts, Sanchez has offered no evidence—let alone clear and convincing evidence—to support a finding that the MAC (or the trial judge) unreasonably applied the third step of Batson.

Finally, the Court's review of the transcripts of the jury empanelment process in Sanchez's case reveals that the trial judge approached the process thoughtfully and appropriately. He conducted thorough individual voir dire of each prospective juror. He engaged in a careful inquiry reflecting serious consideration of whether peremptory challenges were being used in a discriminatory fashion, both in response to counsel's objections and in some instances sua sponte. He considered relevant circumstances including the characteristics of jurors seated, the manner in which previous strikes had been used, and comparisons among jurors who were and were not subject to peremptory strikes. And, though he candidly acknowledged his own subjective disagreement with the state of the law in this area (and, specifically, his belief that jurors should not be stricken on the basis of age), he applied the existing law reasonably and judiciously.

In these circumstances, this Court cannot second-guess the state courts' sensible conclusion that Sanchez had not shown purposeful discrimination against Hispanic members of the venire. Accordingly, Sanchez's Batson claim is meritless.

IV.     CONCLUSION

For the foregoing reasons, Sanchez's habeas petition (Doc. No. 1) is DENIED.[11]

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

[11] As "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), no certificate of appealability shall issue. As explained fully above, the state courts applied legal standards consistent with Supreme Court precedent, and applied them reasonably, in rejecting Sanchez's challenges to the prosecutor's use of peremptory strikes in selecting his jury.